IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SMART PATH CONNECTIONS, LLC § § *Plaintiff*, § v. § § NOKIA OF AMERICA CORP., § § *Defendant*. § | CIVIL ACTION NO. 2:22-cv-0296-JRG-RSP |

**REPORT AND RECOMMENDATION**

Before the Court is Plaintiff Smart Path Connections, LLC's ("SPC") Motion for Summary Judgment Regarding Nokia's Defense of Lack of Marking. (Dkt. No. 121.) After consideration, the motion should be **DENIED**.

## I. BACKGROUND

This case addresses four patents: U.S. Patent No. 7,386,010, U.S. Patent No. 7,463,580, U. S. Patent No. 7,551,599, and U. S. Patent No. 7,697,525. The Asserted Patents were previously owned by Orckit-Corrigent Ltd. and later Orckit IP, LLC. (Mot. at 1.) Orckit-Corrigent previously marketed products identified as CM-100 and CM-4000, central to Nokia's marking arguments. (*Id*.)

On September 21, 2023, Nokia provided SPC with a letter notifying SPC of Nokia's contention that both the CM-4000 products and the CM-100 products practice all the asserted patents. (Dkt. 121-3.) Nokia further alleged the CM-4000 products were sold in 2007 but no marking began until 2010, limiting damages. (*Id*. at 2.) Nokia also asserted the CM-100 products limit damages because they were never marked. (*Id*.)

## II. APPLICABLE LAW

"Pursuant to 35 U.S.C. § 287(a), a patentee who makes or sells a patented article must mark his articles or notify infringers of his patent in order to recover [pre-suit] damages." *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350, 1365 (Fed. Cir. 2017) ("*Arctic Cat I*"). Section 287(a)

provides:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent . . . . In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

"If a patentee who makes, sells, offers for sale, or imports his patented articles has not given notice of his right by marking his articles pursuant to the marking statute, he is not entitled to damages before the date of actual notice." *Arctic Cat I*, 876 F.3d at 1365 (internal quotations omitted).

"[A]n alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked "patented articles" subject to § 287. **To be clear, this is a low bar.** The alleged infringer need only put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent." *Id*. at 1368 (emphasis added). To prevent gamesmanship, the Court cannot "[p]ermit[] infringers to allege failure to mark without identifying any products . . . . Once the alleged infringer meets its burden of production, however, the patentee bears the burden to prove the products identified do not practice the patented invention" or are marked. *Id*.

Compliance with § 287 is a question of fact, the patentee however, bears the burden of showing he/she complied with § 287(a). *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996). However, "[a] patentee's licensees must also comply with § 287, because the statute extends to persons making or selling any patented article for or under [the patentee]." *Arctic Cat I*, 876 F.3d at 1365 (alteration in original) (internal quotations omitted). When "third parties are involved, courts may consider 'whether the patentee made reasonable efforts to ensure compliance with the

marking requirements.'" *Id.* at 1366 (quoting *Maxwell*, 86 F.3d at 1111–12). Again, non-compliance by either the patentee or its licensees "preclude recovery of damages only . . . for any time prior to compliance with the marking or actual notice requirements of the statute. *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993).

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson*, 477 U.S. at 247–48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party must identify the basis for granting summary judgment and the evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the moving party does not have the ultimate burden of persuasion at trial, the party 'must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.'" *Intellectual Ventures I LLC v. T Mobile USA, Inc.*, No. 2:17-CV-00577-JRG, 2018 WL 5809267, at *1 (E.D. Tex. Nov. 6, 2018) (quoting *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)). If the movant bears the burden of proof on an issue at trial, then the movant "must establish beyond peradventure all of the essential elements of the claim or defense to warrant [summary] judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

### III. ANALYSIS

#### A. NOKIA MET ITS INITIAL BURDEN

SPC argues that it is insufficient for Nokia to "pick two product models from a catalog at random and asserted a 'belief' as to marking." (Mot. at 5.) Regarding the CM-100, SPC contends "Nokia hasn't pointed to any evidence other than ipse dixit to support" the belief that CM-100 were unmarked practicing articles. (*Id.*) SPC argues Nokia's sole basis for its belief regarding marking comes from a deposition of a former Orckit-Corrigent employee in another case, inadmissible in this action. (*Id.* at 5-6.) SPC argues that because this witness admitted to having no personal knowledge as to what patents the products practice, and he left Orckit-Corrigent at least five years prior to the earliest asserted patents being granted, this cannot be sufficient under *Arctic Cat I*. (*Id.* at 6.)

SPC further argues that Nokia cannot maintain its positions because its own experts concede the products do not practice the patents. (*Id.*) SPC points to the discussion of secondary considerations of non-obviousness where Dr. Chatterjee, one of Nokia's technical experts, provides there is no evidence to "support that Orckit-Corrigent sold products that practiced the patents-in-suit or show any nexus between the claimed inventions of the '525 and '599 patents and any Orckit-Corrigent products." (*Id.*) SPC also points out that Nokia maintains inconsistent positions with Dr. Jeffay's testimony that no single product, such as CM -100, can infringe the claims. (*Id.* at 7 n2.) SPC contends Nokia cannot meet its initial burden under *Arctic Cat 1* with such inconsistent positions.

Nokia responds that it has met its low bar here. (Opp. at 4-5.) Nokia points to the Federal Circuit holding in *Lubby Holding* and this Court's recent holding in *Estech Sys. IP* in support of the notion that providing notice of a specific unmarked product which it believes practices the patent is sufficient. (*Id.*) Nokia further argues that Orckit-Corrigent admitted the CM-4000

products practiced at least 3 of the asserted patents when it marked the CM-4000 products. (*Id*. at 5.) Nokia's basis for believing the CM-4000 products practice the remaining patent is Dr. Chatterjee's review of "datasheets for the CM-4000 products [that] indicate that the CM-4000 products practiced the '525 patent, according to plaintiff's infringement allegations in this case." (*Id*.) As to the CM-100, Nokia points to the testimony of the prior Orckit-Corrigent employee that "all the patents were implemented into products." (*Id*. at 6.)

Nokia next addresses SPC's contention that its experts concede the products do not practice the patents. (*Id*.) Nokia contends its expert only provides that there is no evidence of nexus to secondary considerations. (*Id*.) Nokia further argues that Dr. Jeffay's statements that a single product cannot practice the claims is not problematic because Dr. Jeffay bases his marking argument on plaintiff's infringement allegations in this case in line with *Arctic Cat*. (*Id*.)

The Court finds that Nokia has met its initial burden here. As this Court previously held, "[t]he *Arctic Cat* burden of production is a low bar predicated upon belief, not proof." *Solas Oled Ltd. v. Samsung Elecs. Co.*, No. 2:21-CV-105-JRG-RSP, 2022 WL 1912873, at *2 (E.D. Tex. May 30, 2022). In that case, the Court admonished the defendant for delaying its assertion that certain unmarked products practiced the asserted patent until after it had taken depositions it felt it needed to prove the assertion. *Id*. Here Nokia provided its belief to SPC that the CM-100 and CM-4000 products practiced all of the asserted patents.

SPC's complaints that this belief should not be credited are unavailing. First, while the deposition testimony of a former Orckit-Corrigent witness is likely insufficient to affirmatively demonstrate the products practiced the patents, it is sufficient for Nokia to base a *belief* upon. Likewise, Dr. Chatterjee's review of datasheets to conclude, according to SPC's infringement contentions, CM-4000 products practice the patents is sufficient for a belief. *See Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017) (holding a review of information related to the alleged unmarked practicing articles and an expert's belief that if the accused product infringed, so did those articles, was sufficient to satisfy the initial burden of production). Likewise, Dr. Chatterjee's opinion that "there was no evidence to

5

'support that Orckit-Corrigent sold products that practiced the patents-in-suit,'" does not negate Nokia's belief. Dr. Chatterjee's testimony was limited to an observation on the evidence SPC provided as support for secondary considerations. (Dkt. No. 136-6 at ¶546.) Finally, Dr. Jeffay's position that a single product cannot practice the claims is not problematic for the initial *Arctic Cat* burden. While Dr. Jeffay should be precluded from offering inconsistent opinions, e.g. that a single device cannot infringe but the CM-100, as a single device, can practice, *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, No. 2:14-CV-911-JRG-RSP, 2016 WL 4718963, at *3 (E.D. Tex. July 12, 2016) (an expert "expert may not propound a theory he or she considers unreliable"), this argument, that a product is an unmarked patented article under plaintiff's infringement contention, is expressly authorized by *Arctic Cat* to support the required belief, s*ee Arctic Cat Inc.*, 876 F.3d at 1368.

### B. THERE IS A GENUINE QUESTION OF FACT IF THE CM-4000 PRODUCTS COMPLIED WITH 35 U.S.C. §287

SPC further argues that it is entitled to summary judgment that the CM-4000 products complied with 35 U.S.C. §287 and that it is entitled to pre-suit damages[1]. (Mot. at 7.) First, SPC notes that it is "undisputed that Orckit-Corrigent marked the CM-4000 products with each of the Asserted Patents(except the '525 Patent)." As to the '525 Patent, SPC argues that because the CM-4000 was produced prior to the issuance of the '525 Patent and Nokia has failed to allege any change in the CM-4000 products, it has satisfied §287. (*Id*.) SPC argues because it has met the requirements of §287 for the full damages period, it is entitled to full damages. (*Id*.)

Nokia responds that SPC must show not only that it began to mark its products before the damages period but that it was also compliant at all times during the damages period. (Opp. at 7.) Nokia contends it has evidence that many of the CM-4000 products were not properly marked,

---

[1] SPC only argues that because Nokia failed to meet its initial burden as to CM-100 it is entitled to summary judgment that it complied with marking as to those products. As the Court separately recommends finding that Nokia met its burden as to CM-100, the Court in turn recommends denying SPC's motion that it is entitled to full damages.

particularly outside of the time period of 2010-2011 where it agrees some products were marked. (*Id*. at 8.) Nokia also reemphasizes that it has met its low burden as to the CM-100 products which would themselves bar past damages. (*Id*. at 8-9.)

In reply, SPC repeats that Nokia has failed to present any evidence that the products changed such that the '525 Patent would need to be marked or that the prior marking would be changed. (Reply at 4.)

The Court finds there is a genuine question of material fact here. Once Nokia has met its initial burden of product, it falls on the party asserting infringement to affirmatively demonstrate the requirements of §287 were met. *Arctic Cat*, 876 F.3d at 1368 ("the patentee bears the burden to prove the products identified do not practice the patented invention."). This burden extends not only to show marking was initially undertaken but that it was substantially continued. *See Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998) ("In order to satisfy the constructive notice provision of the marking statute, Nike must have shown that substantially all of the Air Mada Mid shoes being distributed were marked, and that once marking was begun, the marking was substantially consistent and continuous."). Nokia has presented genuine questions of material fact as to whether SPC can make this affirmative showing. First, SPC's motion presents no arguments that the CM-100 products complied with §287 other than to allege Nokia failed to meet its burden of production. Thus, SPC's motion presents no evidence to show it has met its affirmative burden. Second, Nokia has presented an issue as to continued marking as to the CM-4000 products. SPC has not shown such a position is untenable as a matter of fact or law and thus it presents a genuine question of material fact here.

### IV. CONCLUSION

The Court recommends SPC's motion be **DENIED**.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. FED. R. CIV. P. 72(b)(2); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendation [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 2nd day of February, 2024.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE