# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| SMART PATH CONNECTIONS, LLC, | § | |
| Plaintiff, | § | |
| | § | Case No. 2:22-cv-00296-JRG |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| NOKIA OF AMERICA CORPORATION, | § | |
| Defendant. | § | |

## PROPOSED JURY INSTRUCTIONS[1]

## [[JURY CHARGE]] [[PRELIMINARY INSTRUCTIONS]]

## INTRODUCTION

Ladies and Gentlemen, you are now the jury in this case.  It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

---

[1] Submissions which are agreed to by both Smart Path and Nokia are not highlighted. Submissions proposed by Smart Path that are not agreed by Nokia are highlighted in green. Submissions proposed by Nokia that are not agreed to by Smart Path are highlighted in yellow. The parties have entered their objections, explanations, citations, and commentary in footnotes only.

At the end of the evidence, I will give you detailed instructions about the law to apply in deciding this case and I will give you a list of questions that you are then to answer. This list of questions is called the "verdict form." Your answers to those questions will need to be unanimous and those unanimous answers will constitute the verdict in this case.

## INTRODUCTION TO PATENTS

I now want to briefly tell you what this case is about. This case involves a dispute relating to three United States patents. I know that each of you saw the patent film this morning, but I need to give you some additional instructions now and on the record about a patent and how one is obtained.

Patents are either granted or denied by the United States Patent and Trademark Office, sometimes simply called, for short, the PTO.

Now a patent is a form of property called "intellectual property." And like all other forms of property, a patent may be bought or sold.

If the PTO grants the inventor a patent, that means that for 20 years from the date of the patent application, the patent owner can keep others from making, using, or selling that invention within the United States or from importing it into the United States without the patent holder's permission.

[[Everyone, however, has the right to use existing knowledge and principles. A patent cannot remove from the public the ability to use what was known or obvious before the invention was made or patent protection sought. Thus, to be entitled to patent protection, an invention must be new, useful, and non-obvious.[2]]] [3]

---

[2] Trial Transcript at 107:10-15, *VirnetX, Inc. v. Apple, Inc.,* No. 10-cv-00417-RWS (E.D. Tex. Oct. 29, 2012), Dkt. 608 (modified)

[3] SPC contends that this redundant as it is covered in detail later and explained in the final instructions. It is unnecessarily confusing to introduce obviousness at this stage of the preliminary

The violation of a patent holder's rights is called infringement, and a patent holder may seek to enforce a patent against persons it believes to be infringers by filing a lawsuit in a federal court.  [[That is why the plaintiff has brought its allegations in this case.]] [[That is what we have before us in this case.]][4]

The process of obtaining a patent is called patent prosecution.  To obtain a patent, one must first file an application with the PTO, the United States Patent and Trademark Office.  The PTO is an agency of the United States Government, and it employs trained examiners who review patents and applications for patents.

The application submitted to the PTO includes within it what is called a specification.  The specification contains a written description of the claimed invention, telling what the invention is, how it works, how to make it, and how to use it.  The specification concludes or ends with one or more numbered sentences.  These numbered sentences are the patent claims. The claims may be divided into a number of parts referred to as claim limitations.[5]

When a patent is eventually granted by the PTO, the claims, ladies and gentlemen, define the boundaries of its protection and give notice to the public of those boundaries.

The claims of the patents-in-suit in this case use the word "comprising."  Comprising means including or containing.  A claim that includes the work "comprising," ladies and gentlemen, is not limited to the methods or devices having only the elements that are recited in the claim but also covers methods or devices that add additional elements.

---

instructions.

[4] Trial Transcript at 10:10-13, *Rembrandt Wireless Technologies, LP v. Samsung Electronics Co.,* No. 13-cv-00213-JRG (E.D. Tex. Feb. 9, 2015), Dkt. 290 (modified).

[5] Trial Transcript at 110:12-13, *VirnetX, Inc. v. Apple, Inc.,* No. 10-cv-00417-RWS (E.D. Tex. Oct. 29, 2012), Dkt. 608 (modified).

Let me give an example.  If you take a claim that covers a table and the claim recites a table comprising a tabletop, legs, and glue, the claim will cover any table that contains these structures, even if the table also contains other additional structures, such as a leaf to go in the tabletop or wheels to go on the ends of the legs.  Now, that's a simple example using the word comprising and what it means.  In other words, it can have other features in addition to those covered by the patent.

Now, after the applicant files the application, an examiner at the United States Patent and Trademark Office reviews the application to determine whether or not the claims are patentable, that is to say that they're appropriate for patent protection, and whether or not the specification adequately describes the invention claimed.

In examining a patent application, the examiner reviews certain information about the state of the technology at the time the application was filed.  The PTO searches for and reviews this type of information that is publicly available or that is submitted by the applicant.  This type of information is called prior art.  The examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time.

Prior art is defined by law, and I will give you, at a later time, specific instructions as to what constitutes prior art.  However, in general, prior art includes information that demonstrates the state of the technology that existed before the claimed invention was made or before the application for a patent was filed.

[[A United States patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office, has acted correctly in issuing the patent. This presumption of validity extends to all issued United States patents, including those that claim the

==benefit of an earlier filed patent application, such as so-called continuation or continuation-in-part applications.[6]][7]==

It's your job, ladies and gentlemen, as the jury to consider the evidence presented by the parties and determine independently and for yourselves whether or not the Defendant has proven that any claim of the patents at issue is invalid.

### THE POSITIONS OF THE PARTIES

Now, to help you follow the evidence in this case, I'll give you a brief summary of the parties in this case and their positions.  As I'm sure you all know, the party that brings a lawsuit is called the Plaintiff.  In this case, the Plaintiff is Smart Path Connections, LLC, and you'll hear them referred to throughout trial simply as either Plaintiff, Smart Path, or SPC.

As you know, the party against whom a lawsuit is brought is called the Defendant.  In this case, the Defendant is Nokia of America Corporation, and you'll hear them referred to as Nokia or as the Defendant.

Now, as I told you during jury selection, this is a case of alleged patent infringement.  And, as I mentioned, there are three separate United States patents that have been asserted by Smart Path in this case against Nokia.

The first asserted patent in this case is United States Patent No. 7,551,599.  And patents, you should know, are commonly referred to by their last three digits.  So, in this case, Patent No. 7,551,599 will be referred to as the '599 patent.

---

[6] *Optis Wireless Technology, LLC et al v. Huawei Technologies Co., Ltd*. 2-17-cv-00123, Dkt. 284 at 15 (EDTX 8/25/2018).

[7] Nokia contends that this paragraph is redundant of the discussion of invalidity below and does not fit in the discussion here.

The other two asserted patents are as follows: U.S. Patent No. 7,463,580, which will be referred to as the '580 patent, and U.S. Patent No. 7,386,010, which will be referred to as the '010 patent.

Now, these patents can be referred to and will be referred to at various times of trial collectively and together as the Patents-in-Suit.  They are sometimes also called the Asserted Patents.

Now, the Plaintiff in this case, Smart Path, contends that the Defendant, Nokia, is infringing and has infringed certain claims of the three patents-in-suit by importing, making, or selling products that include Smart Path's patented technology.  Smart Path further contends that Nokia has and continues to contribute to the infringement of others.  Smart Path also contends that it is entitled to money damages as a result of such infringement.

Now, the Defendant, Nokia, denies that they infringe any of the claims of Smart Path's asserted patents.  [[Nokia also denies that it has or continues to contribute to or induce infringement of the Asserted Patents by others.]][89] Nokia also contends that Smart Path is not entitled to any money damages.  Nokia also contends that the asserted claims of the patents-in-suit are invalid.

Now, I know there are new words, and I know there are a lot of new concepts that have been thrown at you today, ladies and gentlemen.  I am going to define a lot of these words and concepts for you as we go through my instructions.  The attorneys are going to discuss many of these in their opening statements.  The witnesses are going to help you through their testimony to understand these terms and concepts.

---

[8] SPC contends this is unnecessary as Nokia already said it doesn't infringe in previous sentence. The jury has not been informed of what induced infringement is at this juncture of the instructions.

[9] Nokia disagrees with SPC argument as the previous paragraph includes a statement that SPC alleges that Nokia contributes to infringement of others.  Thus, a statement that Nokia denies that allegation is appropriate.

## OVERVIEW OF APPLICABLE LAW

Now, my job in this case is to tell you what the law is, to handle matters and rulings on evidence and procedure, and to oversee the conduct of the trial as efficiently as possible, and to maintain the proper decorum of this courtroom.

In determining the law, it is specifically my job to determine the meaning of the claim language from the asserted claims of the patents-in-suit that needs interpretation.  I have already determined the meanings of the claims of the patents-in-suit, and you must accept the meanings or constructions that I give you and use those meanings when you decide whether any particular claim has or has not been infringed and whether or not any particular claim is invalid.  And you are going to be given a document, ladies and gentlemen, in a few moments that will reflect these meanings or constructions that I have determined.

Now, for any of the claim language or claim terms that I have not provided you with a specific definition or construction, you should apply the plain and ordinary meaning.  But if I have provided you with a definition, sometimes called a construction, you are to apply my definition to those terms throughout the case.

However, my interpretation of the language of the claims should not be taken as an indication by you that I have a personal opinion or any opinion at all regarding the issues of infringement and validity.  Those issues, ladies and gentlemen, are yours as the jury to decide, and they are yours to decide alone.

In deciding the issues in this case, you will be asked to consider specific legal standards.  I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether Smart Path has shown, by a preponderance of evidence, that Nokia has infringed any asserted claims of the asserted patents. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another.

There are different ways that a patent can be infringed, and I'll explain the requirements for each of these types of infringement to you in detail at the conclusion of the case, but, in general, [[Nokia]] [[a defendant[10]]] may infringe the asserted patents by making, using, selling, or offering for sale in the United States, or by importing into the United States, a product meeting all the requirements of an asserted apparatus claim. [[Nokia]] [[A defendant[11]]] may also indirectly infringe the asserted patents by contributing to infringement by another person or entity, or by inducing another person or entity to infringe. I will provide you with more detailed instructions on the requirements for each type of infringement at the conclusion of the case.

The second issue you will be asked to decide is whether the claims of the asserted patents are invalid.[12]

[[From the issuance of a patent, it is presumed that the claimed invention is "novel" (not anticipated), "useful," "not obvious," and satisfies the other legal requirements for a valid U.S. patent.]][13]

Invalidity is a defense to infringement. Therefore, even though the PTO has allowed the asserted claims and even though a United States patent as issued by the PTO is presumed to be

---

[10] Trial Transcript, at 121:4-10, *TQ Delta, LLC v. CommScope Holdings Co., Inc.*, No. 2:21-cv-310-JRG, Dkt. 526 (May 30, 2023).

[11] *Id.*

[12] *SynQor, Inc. v. Vicor Corporation*, 2-14-cv-00287, Dkt. 737 (EDTX 10/26/2022).

[13] Nokia contends that this paragraph is unnecessary and redundant of other instructions regarding the presumption of invalidity.

valid, you, the jury, must decide whether those claims are invalid after hearing all the evidence presented during the course of the trial.

[[For a claim to be invalid because it is not new, Nokia must show, by clear and convincing evidence, that all of the elements of a claim are present as arranged in the claims, in a single device, method, printed publication, or patent that existed before the effective filing date of the claimed invention.  We call these "prior art."]][14]

You may find the patent claim to be invalid for a number of reasons, such as because it claims subject matter that is not new or is obvious.[15]For a claim to be invalid as obvious, Nokia must show by clear and convincing evidence that the claim would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time.  You will need to consider a number of questions in deciding whether the inventions claimed in the asserted patents are obvious.  I will provide you detailed instructions on these questions at the conclusion of the case.

A patent may also be invalid if its description in the specification does not meet the "written description" requirement. For a patent claim to be invalid for a lack of an adequate written description, the Defendant must show by clear and convincing evidence that the specification does not describe the claimed invention with sufficient detail so that one skilled in the art can reasonably conclude that the inventor actually had possession of the invention that they're claiming.

If you decide that any claim has been infringed and is not invalid, then you'll need to decide the amount of money damages that are to be awarded to Smart Path as compensation for that infringement.  [[A damages award, ladies and gentlemen, in a patent case must be adequate to

---

[14] SPC proposes removing this paragraph as irrelevant as anticipation is not an issue in this case.

[15] Trial Transcript, at 121:22-24, *TQ Delta, LLC v. CommScope Holdings Co., Inc.*, No. 2:21-cv-310-JRG, Dkt. 526 (May 30, 2023).

compensate the patent holder for the infringement, and in no event may the damage award be less than what the patent holder would have received if they had been paid a reasonable royalty for the use of its patented technology. However, the damages that you award, if any, are meant to compensate the patent holder, and they are not meant to punish Nokia, and you may not include in any damages award an additional amount as a fine or a penalty or whatever is above what is necessary to compensate the patent holder for infringement. Also, patent damages cannot be speculative, and Smart Path, the Plaintiff, must prove the amount of its damages for the alleged infringement by a preponderance of the evidence.]][16][17]

I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

## [[STANDARD OF PROOF[18][19]

There are two standards of proof that you will apply in this case: "preponderance of the evidence" and "clear and convincing evidence." Preponderance of the evidence means evidence that persuades you that a claim is more likely true than not true.  The parties start out equal.  The scales of justice start out equal. The Plaintiff puts on all their evidence which goes on one side of those scales, the Defendant puts on all their evidence that goes on the other side of those scales, and when all the evidence is in, if the party has the burden of proof on any issue by a preponderance

---

[16] SPC objects to this instruction as unnecessary. Damages are explained in detail in the final instructions and are unnecessarily confusing in the preliminary instructions.

[17] Trial Transcript, at 122:23-123:11, *TQ Delta, LLC v. CommScope Holdings Co., Inc.*, No. 2:21-cv-310-JRG, Dkt. 526 (May 30, 2023) (modified).

[18] A standard of proof instruction is necessary at this stage to allow the jury to understand the burdens needed by each party. *See e.g. G+ v. Samsung* 2:22-cv-00078 Final Instructions (January 19, 2024)

[19] Nokia contends that a detailed instruction on the burden of proof at this stage is unnecessary, and the burden of proof is already addressed in the instruction on infringement and validity.  *See generally* Trial Transcript, *TQ Delta, LLC v. CommScope Holdings Co., Inc.*, No. 2:21-cv-310-JRG, Dkt. 526 (May 30, 2023) (not including a "Standard of Proof" section in jury charge).

of the evidence means then those scales must tip, even if slightly, in its favor.  There is one issue in this case that is subject to a different standard. Nokia has the burden of proving invalidity by clear and convincing evidence. When a party has the burden of proving any claim or defense by clear and convincing evidence, it means the evidence must have persuaded you that the claim or defense is highly probable.[20]Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the matter at issue. If the party has the burden of proof clear and convincing evidence, then those scales must tip in that party's favor, and they must definitely tip. It's not adequate that they tip ever so slightly. But if they definitely tip in favor of that party, then that party has met this second burden of proof, the clear and convincing evidence standard.

Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard. However, the clear and convincing standard is not so high as the standard used in criminal law, which is evidence beyond a reasonable doubt. If the proof establishes in your mind a firm belief or conviction that something is true, then the standard has been met. In determining whether any fact has been proved, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them.]]

**CREDIBILITY OF WITNESSES**[21]

---

[20] Adapted from *Personalized Media Communications, LLC v. Apple, Inc,* 2:15-cv-01366-JRG-RSP, Dkt. 252.

[21] Adapted from *Personalized Media Communications, LLC v. Apple, Inc,* 2:15-cv-01366-JRG-RSP, Dkt. 252.

Now, over the course of the trial, you are going to be hearing from a number of different witnesses, and I want you to keep an open mind while you are listening to the evidence and not decide any of the facts until you have heard all of the evidence.

And this is important, ladies and gentlemen. While the witnesses are testifying, remember, you, the jury, will have to decide the degree of credibility and believability to allocate to each of the witnesses and the evidence that they give.

So, while the witnesses are testifying, you should be asking yourselves things like this:

Does the witness impress you as being truthful?

Did he or she have a reason not to tell the truth?

Does he or she have any personal interest in the outcome of the case?

Does the witness seem to have a good memory?

Did he or she have the opportunity and ability to observe accurately the things that they testified about?

Did the witness appear to understand the questions clearly and answer them directly? And, of course, does the witness' testimony differ from the testimony of other witnesses? And if it does, how does it differ?

These are some of the kinds of things that you should be thinking about while you are listening to each witness during the trial of this case and while each and every witness testifies from the witness stand.

**EXPERT WITNESSES**

Also, ladies and gentlemen, I want to talk to you briefly about expert witnesses. When knowledge of a technical subject may be helpful to you, the jury, a person who has special training and experience in that particular field—we call him or her an expert witness—is permitted to testify to you about his or her opinions on those technical matters.

12

However, you are not required to accept an expert witness' or any other witness' opinions. It is up to you to decide who to believe and who not to believe and whether an expert witness or any witness, for that matter, is correct or incorrect about what he or she tells you.

Now, I anticipate that there will be expert witnesses testifying in support of both sides in this case. But when an expert witness is called to testify, it will be up to you to listen to his or her qualifications, and when he or she gives an opinion and explain the basis for it, you will have to evaluate what he or she say, whether you believe it, and to what degree, if any, that you want to give it weight.

As I said, judging and evaluating the credibility and believability of each and every witness is an important part of your job as jurors.

## DEPOSITION TESTIMONY

Now, during the course of the trial, it is possible that there will be testimony from one or more witnesses that is going to be presented to you through what is called a deposition. In trials like this, it is difficult and sometimes almost impossible to get every witness physically present in court to testify at the same time. Therefore, before the trial begins, the lawyers for both sides take the depositions of the witnesses. In a deposition, the witness is present and sworn and placed under oath—just as if he or she were personally in court—a court reporter is present, and the lawyers for both Plaintiff and Defendant are present.

The witness is asked questions and gives answers to those questions under oath. And those answers to the questions, along with the questions themselves, are taken down and transcribed and recorded.

Often in these depositions, in addition to taking down the written version of the questions and answers, the actual deposition is recorded by video so that you can see the witness, hear the question asked, and hear the answer given.

13

These depositions generally, ladies and gentlemen, go on for several hours at a time.  If a witness is going to be presented at trial through a deposition and he or she cannot appear in person, then portions of that deposition will be selected by the parties to be played to the jury as that witness' testimony.

And you will not have to listen to a seven-hour deposition.  You may hear a few minutes or some portion of it that has been selected by the plaintiff and defendant to be presented to you from that witness.

So, when you see deposition testimony that will be played for you, if it looks like there are places where it is spliced together or joined together, that is so the part that is not important for you to hear is cut out, and you don't have to listen to seven hours straight to get 20 or 30 minutes' worth of important testimony before you.

So, if you see areas in the deposition that look like they are spliced or there is a transition, that is because there was a splice or a transition.  But that is to save you a lot of time and effort. The important part, the part that the plaintiff and the defendant believe that you should hear as evidence in this case, will be played to you as deposition testimony.

And I want to remind you, ladies and gentlemen, that deposition testimony is entitled to the same consideration and is to be evaluated by you, the jury, in the same way as if the witness had appeared in Court and testified live in open court.

Also, ladies and gentlemen, during the course of the trial you are going to be presented with various documents which the Court has admitted into evidence as exhibits. Some of these documents are going to have portions of them that have been redacted. Said another way, there are going to be portions that have been blacked out. Those happen because the Court determined in advance of the trial that those portions you cannot see are not relevant or not important and that

you do not need to see them. When you are presented with a document that may have portions of it redacted, do not focus on what is redacted.  Do not try to guess what's been blacked out.  Focus on what's there and visible and that you can read and understand.  In other words, focus on the unredacted portions of the document and do not try to guess what has been blacked out per the Court's earlier instruction.

## RULING ON OBJECTIONS

Now, during the course of the trial, it is possible that the lawyers will periodically make certain objections, and when they do, I will give rulings on those objections.  It is the duty of an attorney to object on each side of the case if the other side purports to offer testimony or other evidence that the objecting attorney believes is not proper under the rules of the Court or the orders of the Court.

Now, upon allowing the testimony or other evidence to be introduced over an objection of an attorney, the Court does not, unless expressly stated, indicate an opinion about the weight or effect of that testimony.  As I have said before, you are the sole judges of the credibility and believability of all the witnesses and the weight and effect, if any, to give to the testimony that is presented through the course of this trial.

Prior to this trial today, both sides have worked with the Court very diligently to go through the exhibits that will be presented in this trial.  And any exhibits proposed by either party that the other side has objected to, the Court has considered those objections in earlier pre-trial hearings before you were selected and seated.

And I have heard all the arguments, I have seen all the documents, and I have already decided what is admissible.  And in those cases, the objections have been overruled and the document has been considered to be an exhibit.  Or in those cases where I think the document is

not admissible under the Rules of Evidence, then I have sustained the objection, and the document is not a part of this case, and you will never see it.

That means, ladies and gentlemen, that from that list of pre-admitted exhibits that the Court has already acted on and approved as to its admissibility, you do not have to sit through all those arguments, and you do not have to hear the back-and-forth between the lawyers about whether it is or is not admissible under the Rules of Evidence.  I have already done that.  And with their effort and my effort together, we have saved you hours and hours of time listening to all of that.

We are now in a position where all those documents have been dealt with, and either side can show you any item from the list of exhibits that I have already approved and simply show it to you and use it over the course of the trial without a formal offer, without a predicate, without an argument, without a dispute.

However, it is still possible that objections may arise during the course of trial, and in that case, I will rule on them.  If I should sustain an objection to a question addressed to a witness, then you must disregard the question entirely, and you can draw no inference from its wording or speculate about what the witness would have said if I had allowed him or her to answer the question.

On the other hand, ladies and gentlemen, if I overrule an objection to a question addressed to a witness, then the witness will answer the question, and you should consider the answer and the question just as if no objection had been made.

### COMMENTS ON THE EVIDENCE

Now, you should know that the law of the United States permits a United States District Judge to comment to the jury regarding the evidence in the case, but such comments from the Judge on the evidence are only an expression of the Judge's opinion.  And the jury can disregard those comments in their entirety as I have said before, you, the jury, are the sole judges of the facts.

You are the sole judges of the credibility and believability of the witnesses and how much weight, if any, to give to all of the testimony that's presented to you over the course of the trial.

So, even though the law of the United States permits me to offer comments on the evidence, as I told you during jury selection, I am going to work very hard not to do that and not to indicate to you what I think about any of the evidence presented over the course of the trial. Evaluating and considering the evidence and from determining what the facts are in this case is your job, ladies and gentlemen. It is not my job.

### THE WRITTEN TRANSCRIPT

Now, the court reporter in front of me is taking down everything that is said in the courtroom. And the transcription of everything that is said over the course of the trial is being prepared in case there is an appeal of this case or for other purposes, but I want you to understand it is not being prepared so that you will have it to use as a resource during your deliberations after you have heard all the evidence. You are not going to have a written version of all this testimony. You are going to have to rely on your memories of the evidence over the course of the trial.

### JUROR NOTEBOOKS

Now, in a moment, each member of the jury is going to be given a juror notebook. And in the back of those notebooks, you will find legal pads, and you will find a pen in the front pocket where you can make notes as the witnesses testify over the course of the trial.

It is up to each member of the jury to decide whether you want to make notes, and if you do, how detailed you want those notes to be. But remember, any notes taken by any member of the jury are for that juror's personal use only. You still have to rely on your memory of the evidence. And that is why you need to pay close attention, as I am sure you will, to the testimony of each and every witness.

You should not abandon your own recollection because some other juror's notes indicate something differently.  The notes that you take are to refresh your recollection, and that's the only reason you should be taking them.

I am going to ask our Court Security Officer at this time to pass out these juror notebooks to the members of the jury.

Thank you.

Ladies and gentlemen, in these notebooks, you will see that you each have a copy of each of the three patents-in-suit.  You are also going to find a section for the witnesses that may testify in this case.  And for each witness that may testify, there should be a separate tabbed page for that witness and his or her picture superimposed at the top of the page and his or her name there as well, identifying the witness.  The remainder of those pages have ruled lines for note taking if you choose to do so.

You will also find a chart in there that provides you with the Court's construction or definitions of certain parts of the language from the asserted claims.  Those are the definitions or constructions that I told you I have already reached, and you must apply my constructions or definitions to that claim language in deciding the issues that you are required to decide.

You should find a chart with on one side the language from the claims that needed to be construed or interpreted by the Court, and directly across from it the actual construction or definition that the Court has already reached and given to you.  You must use my definitions or constructions as you discharge your duty as jurors.

And, again, you should find a new three-hole punched legal pad in the back for additional note taking.

Now, ladies and gentlemen, these notebooks should be in your possession throughout the trial. They are not to be left around loosely. They should either be with you in the jury box where you are now, or they should be on the table in the jury room. At the end of each day, I am going to ask you to leave them on the table in the jury room as you exit the courthouse and go to your respective homes. They will be there in the morning when you come back.

There may be one slight exception to this rule, and that is over the course of the trial, we may take a short recess or break where I will simply say, because I know you are not going to be out of the jury box very long, I may say, ladies and gentlemen, you can simply close and leave your notebooks in your chairs. And in that case, you can simply close them, put them where you are seated, and they will be there when you get back.

But unless I give you those kinds of instructions, they either need to be in your possession, or they need to be on the table in the jury room and not left out in the courtroom.

## OUTLINE OF TRIAL

Now, in a moment, we're going to get to the lawyer's opening statements. These opening statements, ladies and gentlemen, are designed to give you a roadmap of what each side expects that their evidence will show you. You should remember throughout the trial, ladies and gentlemen, that what the lawyers tell you is not evidence. It is what they believe the evidence will show.

The evidence in this case will be the admitted exhibits and the sworn testimony from the witnesses from the witness stand who testify to you subject to cross-examination. And that includes any witness who presents testimony through a sworn deposition where you see and hear the testimony, but the person is not physically present the courtroom. They have nonetheless been sworn and are under oath and are subject to cross-examination, and that deposition testimony, and the live testimony of the witnesses who appear and testify under oath in this courtroom and the

19

exhibits that you are shown that the Court has admitted into evidence, those are the evidence in this case, nothing else, and certainly not what the lawyers tell you.

Now, what the lawyers tell you is their impression of what they believe the evidence is, and they have a duty to try and point out to you where they believe the evidence supports their side of the case.  But, remember, what they're telling you is not evidence itself.

Now, after the lawyers present their opening statements, the Plaintiff will go forward with its evidence and its case.  This is called the Plaintiff's case-in-chief, and the Plaintiff will call its witnesses and present its testimony.  After the witnesses have been called and testified, cross-examined, and released by the Court and all the Plaintiff's witnesses have been called, the Plaintiff will rest its case-in-chief.

And when the Plaintiff rests its case-in-chief, then we will transition to the Defendant's case-in-chief, and the Defendant will call its witnesses and present its testimony, and its witnesses will be cross-examined by the Plaintiff.  And when all the Defendant's testimony and witnesses have been presented, then the Defendant will rest its case-in-chief.

At that point, the rules allow for the Plaintiff to present what are called rebuttal witnesses to rebut what the Defendant has shown in its case-in-chief.  The Plaintiff is not required to present rebuttal witnesses.  We will not know until we get to that point if the Plaintiff chooses to.

But if the Plaintiff calls rebuttal witnesses, then those witnesses will testify in the same way and will be subject to cross-examination by the Defendant.  And when all the Plaintiff's rebuttal witnesses, if any, have testified, then at that point, ladies and gentlemen, you will have heard all the evidence in this case.

Once you have heard all of the evidence in this case, then I will present to you my final instructions on the law that you are to apply.  Those instructions from the Court to the jury are

sometimes called the Court's charge to the jury.  Once I have given you my charge, my final instructions, then the lawyers for both sides will present their closing arguments to you.

And once the closing arguments have been completed by both sides, then I will instruct you to retire to the jury room.  Only when all the evidence is complete and you retire to the jury room to deliberate and reach your verdict, only then is it proper for you to discuss the case among yourselves.

I will send with you the verdict form that contains the questions in it that you are to answer. At that time, but not before, you will be obligated to talk to each other about the evidence as a part of addressing those questions and doing your best to come to a unanimous answer to each of those questions in the verdict form.

### CONDUCT OF JURY

Now, throughout this trial and until I release you as jurors, you are not to communicate with anybody about this case in any way, and you are not to communicate with the eight of yourselves about this case in any way until I direct you to retire to the jury room and deliberate on your verdict. And then when that happens, you become obligated to discuss among the eight of you the evidence that you've heard over the course of the trial in an effort to come to a unanimous agreement about how to answer the questions that are going to be submitted to you in the verdict form. Over the course of this trial the lawyers in this case, the witnesses, and anybody associated with either side, is not going to visit with you, not going to speak, not going to be friendly, not going to interact with you. And that's because they are following my instructions. Do not take it for rudeness, do not take it for anything negative; they are simply doing what I have instructed them to do.

Now, with these instructions, ladies and gentlemen, we will proceed to hear opening statements from the parties.  We will begin with the Smart Path's opening statement.

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### INTRODUCTION

Ladies and Gentlemen:

You have now heard the evidence in this case, and I will now instruct you on the law that you must apply.

Each of you is going to have your own printed copies of these final jury instructions that I'm giving you now, so there's really no need for you to take notes unless you just particularly want to.

Ladies and Gentlemen, as I have said previously, you, the jury, are the sole judges of the facts in this case. Do not consider any statement that I have made in the course of the trial or make during these instructions as an indication to you that I have any opinion about the facts in this case.

You are about to hear closing arguments from the attorneys. Statements and arguments of the attorneys are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You will take this verdict form with you to the jury room, and when you have reached a unanimous decision or agreement as to the verdict, you will have your foreperson fill in the blanks in the verdict form, date it, and sign it.

Answer each question in the verdict form from the facts as you find them to be. Do not decide who you think should win the case and then answer the questions to reach that result. Again, your answers and your verdict must be unanimous.

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all the witnesses, regardless of who may have called them, and you may consider the effect of all the exhibits received and admitted into evidence, regardless

of who may have produced or presented them. You, the jurors, are the sole judges of the credibility of each and every witness and the weight and effect to be given to the evidence in this case.

Now, in deciding the facts in this case, you may have to decide which testimony to believe and which testimony to not believe. You alone are to determine the questions of credibility or truthfulness of the witnesses, and in weighing the testimony of the witnesses, you may consider the witness's manner and demeanor as reflected on the witness stand.

You may consider any feelings or interest a witness may have in the case and any bias or prejudice about the case that the witness may have, and you may consider the consistency or inconsistency of his or her testimony considered in the light of the circumstances.

Has the witness been contradicted by other evidence?  Has he or she made statements at other times in other places contrary to what he or she said on the witness stand?  You must give the testimony of each witness the amount of credibility and weight that you think it deserves.  You must keep in mind, however, ladies and gentlemen, that a simple mistake does not mean that a witness is not telling the truth.

You must consider whether any misstatement was an intentional falsehood or a simple lapse of memory and what significance could be attached to that testimony.

Now, unless I instruct you otherwise, you may properly determine that the testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all of the evidence you believe that single witness.

As I have told you previously, the attorneys in this case are acting as advocates for their competing parties and their competing claims, and they have a duty to object when they believe evidence is offered that should not be admitted under the rules of the Court.

In that case, when the Court has sustained an objection to a question addressed to a witness, you are to disregard the question entirely, and you may not draw any inferences from its wording or speculate about what the witness would have said if I had permitted them to answer the question. If, on the other hand, the objection was overruled, then you are to treat the answer to the question and the question itself just as if no objection had been made; that is, like any other question and answer.

At times during the trial, it was necessary for the Court to talk to the lawyers here at the bench or outside of your hearing when you were in the jury room.  This happens because during a trial, there are things that sometimes come up that do not involve the jury.  You should not speculate about what was said during such discussions that took place outside of your presence.

Certain testimony in the case has been presented to you through depositions.  A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial.  If a witness cannot be present to testify in person, then the witness's testimony may be presented under oath in the form of a deposition.   Before the trial, the attorneys representing the parties in this case questioned these deposition witnesses under oath.  At that time, a court reporter was present and recorded their sworn testimony.  Deposition testimony is entitled to the same consideration by you, the jury, as testimony given by a witness in person from the witness stand in open court. Accordingly, you should judge the credibility and importance of the deposition testimony to the best of your ability, just as if the witness had testified before you from the witness stand.

While you should consider only the evidence in this case, you should understand that you are permitted to draw such reasonable inferences from the testimony and the exhibits as you feel are justified in the light of common experience.

In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and the evidence in this case.  However, you should not base your decisions on any evidence not presented by the parties in open court during the trial of this case, including your own personal experiences with any particular products that are at issue in this case.

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case.  One is direct evidence, such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence; that is, the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that you, the jury, find the facts based on the evidence presented, both direct and circumstantial.

The Parties have stipulated or agreed to some facts in the case.  When the lawyers for both sides stipulate as to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard the fact as proven.

The attorneys have used slides and other visual aids, sometimes referred to as "demonstrative exhibits," while presenting or examining a witness.  Demonstrative exhibits are a party's picture or model to describe something involved in this trial.  If your recollection of the evidence differs from the demonstrative exhibit, rely on your recollection.  The demonstrative is not evidence, but the witness's testimony during which they use the demonstrative is evidence.

When knowledge of a technical subject may be helpful to the jury, a person who has special training and experience in that technical field, called an expert witness, is permitted to state his or her opinion on those technical matters to the jury.  However, you are not required to accept that

opinion.  As with any other witness, it is solely up to you to decide who you believe and who you don't believe and whether or not you want to rely on their testimony.

Any patent holder has the right to file a suit in a United States District Court, and the right to a trial by jury, if it believes its patent rights are being infringed.  However, you should make no inference from the fact that a suit was filed or brought to trial.  You are to consider this suit as a dispute between two parties of equal worth and standing in the community, and render your verdict based solely on the evidence presented in the trial.

In any legal action, facts must be proven by a required amount of evidence known as the burden of proof.  The burden of proof in this case is on the Plaintiff, Smart Path, for some issues, and it is on the Defendant, Nokia, for other issues.  There are two burdens of proof that you will apply in this case.  One is the preponderance of the evidence, and the other is clear and convincing evidence.

Smart Path has the burden of proving patent infringement by a preponderance of the evidence.  Smart Path also has the burden of proving damages for any patent infringement by a preponderance of the evidence.  A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true.  Sometimes this is talked about as being the greater weight and degree of credible testimony.

Nokia has the burden of proving patent invalidity by clear and convincing evidence.  Clear and convincing evidence means evidence that produces in your mind an abiding conviction that the truth of the party's factual contentions are highly probable. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.   If the proof

establishes in your mind an abiding conviction in the truth of the matter, then the clear and convincing evidence standard has been met.

These standards are different from what you may have learned about in criminal proceedings where a fact is proven beyond a reasonable doubt.  On a scale of the various standards of proof, as you move from the preponderance of the evidence, where the proof need only be sufficient to tip the scales in favor of the party proving the fact, to at the other end beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between those two standards.

In determining whether any fact has been proved by a preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all the witnesses, regardless of who called them, and all the exhibits received into evidence during the trial, regardless of who may have produced them.

## CONTENTIONS OF THE PARTIES[22]

As I did at the beginning of the case, I'll give you a summary of each side's contentions, and then I'll provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I told you previously, this case concerns three United States Patents asserted by Smart Path.  Smart Path's patents are U.S. Patent Nos. 7,551,599; 7,463,580; and 7,386,010, which you have consistently heard referred to throughout the trial as the '599, '580, and '010 patents.  I will refer to them as the patents-in-suit.  I may also refer to them as the asserted patents.

---

[22] *Whirlpool Corp. v. TST Water LLC,* No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017).  ECF No. 166.; Trial Tr., *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Mar. 16, 2015), ECF No. 428.

Smart Path seeks money damages from Nokia for allegedly infringing the patents-in-suit, by making, using, importing, selling, and/or offering to sell in the United States routing equipment. Sometimes in these instructions I will refer to these as the Nokia Accused Products, [[which include the 7210, 7250, 7450, 7750, 7950, and 7705 series of Nokia's switches and routers.]][23] Smart Path contends that the accused products infringe the following claims:

Claim 59of the '599 Patent;

Claims 12 and 15  of the '580 Patent; and

Claims 1, and 3 of the '010 Patent.

These claims are sometimes referred to as the asserted claims.  Smart Path alleges that the accused products infringe the asserted claims literally.  Smart Path seeks a reasonable royalty.[24]

Nokia denies that the accused products infringe the asserted claims of the'599, '580, and '010 patents.  [[Nokia contends that during the terms of these patents, it did not make, use, sell, or offer for sale within the United States, or import into the United States, any products that infringe any of the asserted claims of the asserted patents.]]

Nokia also denies [[it owes]] [[that]] Smart Path [[is entitled to]] any damages in this case.

Nokia further contends that the asserted claims of the'580, and '010 patents are invalid as obvious in view of prior art that existed before Smart Path's alleged inventions and, therefore, that all the asserted claims of all the asserted patents are invalid.

Invalidity is a defense to infringement. Invalidity and infringement, however, are separate and distinct issues.  Your job is to decide whether Nokia has infringed any of the asserted claims and whether those claims are invalid. If you decide that any claim has been infringed and is not

---

[23] Smart Path contends that this is unnecessary. Neither parties' proposed verdict form is by product, and injecting the different products into the instruction is unnecessarily confusing.

[24] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction B.1.

invalid, you will then need to decide the amount of money damages, if any, to be awarded to Smart Path to compensate it for that infringement.

## PATENT CLAIMS[25]

Before you can decide many of the issues in this case, you will need to understand the role of the patent claims.

[[The purpose of the claims is to particularly point out what the applicant regards as the claimed invention and to define the scope of the patent owner's exclusive rights.[26]]][27] The claims of a patent are numbered sentences at the end of the patent. [[The claims define Smart Path's rights under the law.]] The claims are important, because it is the words of the claims themselves that define what the patent covers. The figures and the text in the rest of the patent provide a description or examples of the invention, and they provide a context for the claims; but it is the claims that define the breadth of the patent's coverage.

Each claim is effectively treated as if it were its own separate patent, and each claim may cover more or may cover less than any other claim. Therefore, what a patent covers collectively or as a whole depends on what each of its claims cover.

## CLAIM CONSTRUCTION

You first need to understand what each claim covers in order to decide whether or not there is infringement of that claim and to decide whether or not the claim is invalid. And the first step is to understand the meaning of the words used in the patent claim. The law says that it is my role

---

[25] *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017), ECF No. 166; Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 2.1.

[26] AIPLA's *Model Patent Jury Instructions* (2019) at § 1.1 (United States Patents).

[27] SPC contends this addition is unnecessary and duplicative of what is stated later in the instruction.

to define the terms of the claims, but it is your role to apply my definitions to the issues that you're asked to decide in this case.

Accordingly, as I explained at the beginning of the case, I have determined the meaning of certain claim language.  I have provided the definitions of those claim terms in your jury notebooks.  I incorporate those definitions by reference into my jury instructions.  You must accept my definitions of these words in the claims as being correct, and it is your job to take these definitions that I have supplied and apply them to the issues that you are asked to decide, including the issues of infringement and invalidity.  [[You should disregard any evidence presented at trial that contradicts or is inconsistent with the constructions and definitions I have given you.[28]]][29]

For claim limitations where I have not construed, that is defined or interpreted, any particular term, you are to use the plain and ordinary meaning of that term as understood by one of ordinary skill in the art, which is to say, in the field of technology of the patent at the time of the alleged invention in light of the specification. The meanings of the words of the patent claims must be the same when deciding both the issues of infringement and validity.

You have been provided with copies of each of the three asserted patents, and these are inside your juror notebooks, and you may use them and refer to them during your deliberations.

---

[28] Trial Transcript, at 37:20-22, *TQ Delta, LLC v. CommScope Holdings Co., Inc.*, No. 2:21-cv-310-JRG, Dkt. 526 (May 30, 2023).

[29] SPC: The paragraph above states that claim constructions are in the juror notebook, there is no reason to repeat this. This instruction is vague and confusing.  It is unclear why the jury should "disregard" any evidence unless it is specifically instructed to do so by the Court during trial, for example, if an objection and request to strike testimony is granted. Otherwise, there is no reason the jury should "disregard" evidence; the jury should consider the evidence and determine whether it supports a finding that the accused products or prior art reads on the claims. It is unclear what it even means for evidence to "contradict" the claim construction or how the jury could make such a determination without first considering and weighing the evidence. This is also confusing because neither party is permitted to argue claim construction to the jury, and this instruction suggests the jury will hear evidence regarding the constructions.

## TYPES OF PATENT CLAIMS

[[Claims may describe apparatuses, devices, or products such as machines.  Such claims are called apparatus claims.  Claims may also describe a system with specific elements designed for a patented purpose. Those claims are called system claims]][30],[31]

## PATENT CLAIMS AND LIMITATIONS

I will now explain how a claim defines what it covers.  A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or method satisfies each of these requirements in that sentence, then it is covered by and infringes the claim. There can be several claims in a patent.  A claim may be narrower or broader than another claim by setting forth more or fewer requirements.  The coverage of a patent is assessed on a claim-by-claim basis.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."

When a [[thing, such as a device, product, or system,]][32] meets all the requirements of a claim, where it meets all of its limitations or all of its elements, the claim is said to "cover" that [[thing]]; and that [[thing]] is said to "fall" within the scope of that claim.  In other words, a claim covers a [[device,]] product[[, or system]] where each of the claim elements or limitations is

---

[30] Adapted from Final Jury Instructions at 6-7, Dkt. No. 294, *Cellular Communications Equipment LLC v. Apple Inc.*, 6-14-cv-00251 (E.D. Tex. Sept. 14, 2016).  Nokia further contends that SPC is improperly trying to conflate system and method claims to avoid instructing the jury on the difference in proof required to show infringement of a method and system claim.

[31] SPC contends this is unnecessarily confusing and not needed for the instructions. The verdict form is not asking the jury to award damages on a per patent claim basis, but a per patent basis. Adding these statements is not warranted for the jury as the fact finder.

[32] SPC: Nokia does not explain why it objects to SPC's language, nor does it's proposed language provide any differences that are not burdensome and confusing to the jury. The Accused Products are physical routers, and thus pointing the jury to a process is unnecessary for all Asserted Patents.

present in that [[device,]] product[[, or system]]. [[A claim covers such a product or system even if the product or system has additional features or components that are not covered by the claim.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a device, product, or system must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement.]]

If a [[device,]] product[[, or system]] is missing even one limitation or element of a claim, the [[device,]] product[[, or system]] is not covered by that claim [[unless an equivalent of the limitation is present]].  If the product is not covered by the claim, the product does not infringe the claim.

## COMPRISING

The claims of the patents-in-suit use the word "comprising."  Comprising means including or containing. When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.

For example, if you take a claim that covers the invention of a table, if the claim recites a table comprising a tabletop, four legs and glue that holds the legs and the tabletop together, the claim will cover any table that contains those structures, even if the table also contains other structures, such as leaves to go in the tabletop or wheels to go on the ends of the legs.  That is a simple example using the word "comprising" and what it means.  [[But, in other words, it can have other features, in addition to those that are covered by the patent.[33]]]

---

[33] *KAIST IP US LLC, v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP, (E.D. Tex. June 15,

## INFRINGEMENT

I will now instruct you on infringement in more detail.  If a person makes, uses, sells, or offers for sale within the United States or imports into the United States what is covered by a patent claim without the patent owner's permission, that person is said to infringe the patent.

To determine whether there is infringement, you must compare the asserted patent claims, as I have defined each of them, to the accused products.  [[Keep in mind that only the claims of a patent can be infringed]].[34],[35]  You should not compare the accused products with any specific example set out in the patent or with the prior art in reaching your decision on infringement.

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and the scope of the claims, the legal requirements for infringement, and the evidence presented to you by both of the parties.

I will now instruct you on the specific rules that you must follow to determine whether Smart Path has proven that Nokia has infringed one or more of the patent claims involved in this case by a preponderance of the evidence.  In order to infringe a patent claim, the accused device must include each and every element of the claim either literally.

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and the scope of the claims, the legal requirements for infringement, and the evidence presented to you by both of the parties.

I will now instruct you on the specific rules that you must follow to determine whether Smart Path has proven that Nokia has infringed one or more of the patent claims involved in this

---

2018).

[34] Trial Transcript, at 38:23-24, *TQ Delta, LLC v. CommScope Holdings Co., Inc.*, No. 2:21-cv-310-JRG, Dkt. 534 (May 30, 2023).

[35] SPC contends this is redundant and is covered in the patent video.

case by a preponderance of the evidence. The types of infringement alleged in this case is  called literal infringement. Smart Path contends that Nokia directly infringes the asserted patents both literally. I'll explain the requirements of this type of infringement to you.

### DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT"

In order to prove literal infringement, Smart Path must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Nokia made, used, sold, offered for sale within, or imported into the United States a product that meets all of the requirements of a claim.

A claim element is literally present if it exists in the accused product as it is described in the claim language either as I have explained it to you or if I did not explain it according to its ordinary meaning as understood by one of ordinary skill in the art.

[[An accused product infringes a claim if it satisfies the claim elements, even though it may be capable of non-infringing modes of operation.[36]]]  So long as an accused product has each and every one of the claim limitations, infringement in that claim is shown even if the product contains additional features or elements not required by the claim.[37]

[[As I explained earlier, several of the Asserted Claims are apparatus or product claims. For apparatus or product claims, if the Accused Products do not contain one or more limitations of the limitations recited in a claim, then that product does not directly infringe that claim. If you find the accused product includes each element or limitation of the claim, then that product infringes the claim.[38][39]

---

[36] *Netlist v. Samsung*, 2:21-CV-463-JRG, final jury instructions.

[37] *Netlist v. Samsung*, 2:21-CV-463-JRG, final jury instructions.

[38] Adapted from Final Jury Instructions at 11, Dkt. No. 294, *Cellular Comm'cns Equip. L.L.C., v. Apple, Inc.*, No. 6:14-cv-251 (E.D. Tex. Sept. 14, 2016).

[39] SPC contends there is no need to explain different types of claims to the jury. No damages expert in this case provides a damages opinion based upon the type of claim, but instead on a per patent basis. The verdict form is not presented on a per patent basis, not a per claim verdict. If

]] [40]

A patent can be directly infringed even if the alleged infringer did not have knowledge of the patent and without the infringer knowing that what it was doing is infringement of the claim.[41]

## MEANS-PLUS-FUNCTION CLAIMS

The "call admissions control module" term in asserted claim 8 of the '580 patent is a so-called means-plus-function claim limitation.

Means plus function claims have a special meaning in patent law.  It does not cover all the structures that could perform the function set forth in the claim.  Instead, it covers a structure or set of structures that performs that function and that is either identical or equivalent to the structures described in the patent for performing the function. [[You must decide whether two structures are identical or equivalent.[42]]][43]

[[The recited function for the phrase "call admission control (CAC) module" (as used in claim 8 of the '580 patent) is "allocating a resource associated with the network element so as to share an allocation of the resource among the at least some of the tunnels responsively to the notification." The corresponding structure is "a processor programmed to allocate shared resourced among tunnels having identical SGI values," and equivalents thereof.]][44]

---

Nokia contends the evidence doesn't support the damages verdict, it may maintain that claim for post-trial briefing. There is no need to burden the jury with instructions that are not reflected withing the verdict form.

[40] Smart Path contends these additional paragraphs are unnecessary and confusing. Nothing explains what "actually performed" means, such as testing.

[41] *Whirlpool*, Case No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. Mar. 23, 2017).

[42] Adapted from Final Jury Instructions at 9, Dkt. 294, *Cellular Comm'cns Equip., LLC v. Apple Inc.*, No. 6:14-cv-251 (E.D. Tex. Sept. 15, 2016).

[43] SPC contends that this is redundant with the previous sentence.

[44] SPC contends that this instruction is unnecessary as the jury will have the claim construction order included in their notebooks.

To demonstrate that these limitations are literally met, Smart Path must prove by a preponderance of evidence (that is, it is more likely than not) that Nokia's products contain a structure that (1) performs the recited function; and (2) is identical or equivalent to the structure that is disclosed in the patent specification and drawings for performing the recited function.  I have set forth in my claim construction order both the recited function that is to be performed by the structure, and the structure that is disclosed in the patent specification that performs the recited function.  Those constructions are included under Tab labeled "Claim Terms" in your Juror Notebook.

[[Where the structure in the accused products and the structure disclosed in the patent specification are not identical, Smart Path has the burden of proving that it is more probable than not that the relevant structure in the Accused Products is equivalent to the disclosed structure in the patent, as I have defined it.[45]]][46]

Whether the structure of the accused product is equivalent to a structure disclosed in the patent specification and drawings is decided from the perspective of a person of ordinary skill in the art.  The structure in the accused product and that disclosed in the patent are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial.  One way to show this is to demonstrate that the structure in the accused product performs the identical function in substantially the same way to achieve substantially the same result as would be achieved by the element that is disclosed in the patent specification.

---

[45] Adapted from Final Jury Instructions at 12, Dkt. No. 294, *Cellular Communications Equipment LLC v. Apple Inc.*, 6-14-cv-00251 (E.D. Tex. Sept. 14, 2016).

[46] SPC contends this is unnecessary in view of the other instructions. *G+ v. Samsung* Final Jury Instructions (January 26, 2024).

In deciding whether the differences would be insubstantial you may consider whether people of ordinary skill in the art would have known that the accused structure and the structure identified in my claim construction were interchangeable at the time the patent issued.

[[That the structure in the accused products may perform additional functions not disclosed in the patent specification does not mean the structure is not identical or equivalent to the structure that I identified in my claim construction order.  This is the case even if the accused structure achieves better performance than that is disclosed in the patent specification.  Further, even when two structures would not have been considered equivalent structures in other contexts, e.g., if performing functions other than the claimed function, they may nevertheless be equivalent for the means-plus-function term when performing the same function.]][47]

[[If the Accused Product does not perform the specific function recited in the "means-plus-function" claim element, the element is not met, and the product does not literally infringe the claim. In addition, if the Accused Product's structures perform the function recited in the claim element, but those structures of the Accused Product are neither identical nor "equivalent" to the structures I defined for you, then the product does not literally infringe the claim.[48] ]]

## INDIRECT INFRINGEMENT – ACTIVE INDUCEMENT

Smart Path alleges that Nokia is liable for infringement by actively inducing end users to directly infringe the Asserted Patents literally.  As with direct infringement, for any claim for which Smart Path asserts active inducement, you must determine whether there has been active inducement on a claim-by-claim basis.

---

[47] *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1304-05 (Fed. Cir. 2011)

[48] Adapted from Final Jury Instructions at 13, Dkt. No. 294, *Cellular Communications Equipment LLC v. Apple Inc.*, 6-14-cv-00251 (E.D. Tex. Sept. 14, 2016).

Nokia is liable for active inducement of a claim only if Smart Path proves by a preponderance of the evidence:

that the acts actually carried out by end users of Nokia accused products directly infringe that claim;

that Nokia took action during the time the asserted patents were in force that was intended to cause and led to the infringing acts by end users of the Nokia accused products; and

that Nokia was aware of the asserted patents and knew [[or was willfully blind to the fact]] that that the acts, if taken, would constitute infringement of that patent, [[or Nokia believed there was a high probability that the acts, if taken, would constitute infringement of the Asserted Patents but deliberately avoided confirming that belief.]]. [49][50]

[[In order to establish active inducement of infringement, it is not sufficient that Nokia's customers themselves directly infringe the claim. Nor is it sufficient that Nokia was aware of the acts by its customers that allegedly constitute infringement. Rather, you must find that Nokia specifically intended its customers to infringe the Asserted Patents or that Nokia believed there was a high probability that its customers would infringe the Asserted Patents but deliberately avoided confirming that belief.]][51][52]

---

[49] Nokia: Nokia has always disputed that SPC had shown that Nokia was aware of or willfully blind to any act of infringement.

[50] SPC: Nokia did not make any disclosures regarding a state of mind defense, so this part of the proposed instruction is inappropriate.

[51] Transcript of Jury Trial at 26-28, Dkt. No. 294, *Biscotti Inc. v. Microsoft Corp.*, 2:13-cv-1015-JRG-RSP (E.D. Tex. June 16, 2017); Jury Instructions at 17-18, Dkt. No. 256, *SSL Servs., LLC v. Citrix Sys., Inc., et al.*, No. 2:08-cv-158-JRG (E.D. Tex. June 18, 2012); The Federal Circuit Bar Association, *Model Patent Jury Instructions* § 3.2 (July 2016 ed.).

[52] SPC the preceding paragraph is unnecessarily duplicative and confusing. However, if it is included, the instruction should not omit the portion of the *Unwired* case addressing what is sufficient to prove intent ("the accused took deliberate actions to avoid confirming infringement," 829 F.3d 1353, 1364) as opposed to merely what is not sufficient.

## INDIRECT INFRINGEMENT – CONTRIBUTORY INFRINGEMENT

Smart Path argues that Nokia is liable for contributory infringement by contributing to the direct infringement of the asserted patents by its end users of the accused Nokia products.  As with direct infringement, for any claim for which Smart Path asserts contributory infringement, you must determine contributory infringement on a claim-by-claim basis. Nokia is liable for contributory infringement of a claim if Smart Path proves by a preponderance of the evidence:

(1) Nokia sells, offers to sell, or imports within the United States a component of a product, material, or apparatus for use in a process, during the time the asserted patents are in force;

(2) the component, material, or apparatus is not a staple article or commodity of commerce suitable for substantial noninfringing use;

(3) the component, material, or apparatus constitutes a material part of the invention;

(4) Nokia is aware of the asserted patents and knows that the component, material, or apparatus is especially made or adapted for use as an infringement of the patent claims; and

(5) the end users of the accused Nokia products use the component, material, or apparatus to directly infringe a claim.

## [[WILLFUL INFRINGEMENT[53]

If you find that it is more likely than not that Nokia infringed a valid claim of SPC's patents, then you must also determine whether or not Nokia's infringement was willful. Smart Path asserts Nokia infringed willfully only after filing of the Complaint in this action.

To show that Nokia's infringement was willful, Smart Path must prove by a preponderance of the evidence that Nokia knew of Smart Path's patent and intentionally

---

[53] SPC: Proposed Instruction Adapted from AIPLA 2024 Model Jury Instructions.

infringed at least one asserted claim of the patent. You may consider whether Nokia's behavior was deliberate or intentional. However, you may not find that Nokia's infringement was willful merely because Nokia knew about the patent, without deliberate or intentional infringement. In determining whether SPC has proven that Nokia's infringement was willful, you must consider all of the circumstances and assess Nokia's knowledge at the time the challenged conduct occurred.

If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement.

In this case, Smart Path argues both that Nokia infringed and, further, that Nokia infringed willfully as of the filing of the Complaint in this action[54].  If you have decided that Nokia has infringed, you must go on and address the additional issue of whether or not Nokia's infringement was willful.  Willfulness requires you to determine whether Smart Path proved by a preponderance of the evidence that the infringement by Nokia was especially worthy of punishment.  You may not determine that the infringement was willful just because Nokia knew of the asserted patents and infringed them.  Instead, willful infringement is reserved for only the most egregious behavior, such as where the infringement is malicious, deliberate, consciously wrongful, or done in bad faith.

To determine whether Nokia acted willfully, consider all facts.  These may include, but are not limited, to:

1.  Whether or not Nokia acted consistently with the standards of behavior for its industry;

---

[54] Nokia:  This instruction is important to clarify that SPC alleges willfulness only after the filing of the complaint, i.e., there is no allegation of pre-suit willfulness.

2.   Whether or not Nokia reasonably believed it did not infringe or that the patent was invalid;

3.   Whether or not Nokia made a good-faith effort to avoid infringing the asserted patents, for example, whether Nokia attempted to design around the asserted patents; and

4.   Whether or not Nokia tried to cover up its infringement.

None of these factors alone is determinative, and this list is not an exhaustive list of things that you should consider.  Your determination of willfulness should incorporate the totality of the circumstances based on all the evidence presented during the trial.  If you decide that any infringement was willful, that decision should not affect any damages award that you might make.  I will take willfulness into account later.]] [55]

## VALIDITY

I will now instruct you on the rules that you must follow in deciding whether or not Nokia has proven by clear and convincing evidence that the asserted claims of the patents are invalid.  Patent invalidity is a defense to patent infringement.  Invalidity and infringement are separate and distinct issues that must be separately decided by you, the jury.

An issued patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office, which you have heard referred to throughout this trial as the PTO or the Patent Office, acted correctly in issuing the patent.  This presumption of validity

---

[55] Final Jury Instructions at 14-15, Dkt. No. 284, *Optis Wireless Tech., LLC v. Huawei Techs. Co.*, No. 2:17-cv-123-JRG-RSP (E.D. Tex. Aug. 25, 2018); The Federal Circuit Bar Association, *Model Patent Jury Instructions* § 3.10 (July 2016 ed.).

extends to all issued United States patents.  [[In order to overcome this presumption,]] Nokia must establish by clear and convincing evidence that a claim in the patent is not valid.[56]

Like infringement, invalidity is determined on a claim-by-claim basis.  You must determine separately for each claim whether that claim is invalid.[57]  If one claim of a patent is invalid, this does not necessarily mean that any other claim is invalid.[58] You must apply the claim language consistently and in the same manner for issues of infringement and for issues of invalidity.

### PRIOR ART[59]

A previous device, system, method, publication, or patent that predates the claimed invention is generally called prior art, and may include items that were publicly known or that had been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.   Prior art also includes the knowledge or use of an invention by a person of ordinary skill in the art in the United States at the time of invention.

In deciding validity, the only correct comparison is between the prior art and the limitations of the asserted claims.  It is improper to compare the prior art to the accused product.

[[In patent law, a previous device, system, method, publication, or patent that predates the claimed invention is generally called "prior art."  In this case, prior art may include any of the following items:

---

[56] *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).

[57] *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).

[58] *Netlist v. Samsung*, 2:21-CV-463-JRG, final jury instructions.

[59] *Optis Wireless Tech., LLC, et al. v. Apple Inc.*, 2:19-cv-00066-JRG, Trial Tr. 980 (Final Jury Instructions) (E.D. Tex. Aug. 10, 2020); Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction 4.3a-3 Prior Art.

- Any patent that issued or any printed publication that published anywhere in the world before the priority date of an Asserted Patent;

- Any patent that issued or any printed publication that published anywhere in the world more than one year before the application for the asserted patents were filed in the United States; and

- Any patent application that was filed in the United States by someone other than the inventors of the asserted patents, before the  priority date of an Asserted Patent.[60]

In this case, Nokia contends that the asserted claims of the Asserted Patents are invalid as obvious under in view of the following prior art:

- For the '580 Patent:

  o U.S. Patent Appl. Pub. No. 2005/0169266 ("Aggarwal-266") in combination with the RFC 4875 Internet Draft renders obvious the asserted claims

- For the '010 Patent:

  o U.S. Patent No. 7,386,605 to Shah ("Shah") renders obvious the asserted claims.

- The priority dates of the asserted patents are as follows:

March 29, 2004 for the '599 Patent;

December 15, 2005 for the '580 Patent; and

---

[60] Adapted from Final Jury Instructions at 29, Dkt. No. 777, *W.L. Gore & Associates, Inc. v. C.R. Bard, Inc.*, No. 11-515 (LPS) (CJB) (D. Del. Mar. 7, 2007); Final Jury Instructions at 32, *Crown/CMB Packaging Technology, Inc. v. Belvac Production Machinery, Inc.,* Case No. 6:18-cv-70 (W.D. Va. July 7, 2022).

June 13, 2003 for the '010 Patent.]][61]

## PRINTED PUBLICATIONS[6263]

[[Nokia contends that the prior art references discussed earlier qualify as printed publications before the priority dates of the asserted patents.

A printed publication must have been maintained in some tangible form, such as printed pages, typewritten pages, internet publication, or photocopies, and must have been sufficiently accessible to persons interested in the subject matter of its contents.

Information is publicly accessible if it was distributed or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter exercising reasonable diligence can locate it.  It is not necessary for the printed publication to have been available to every member of the public.  An issued patent is a printed publication as of its date of issue.  A published patent application is a printed publication as of its publication date.

Nokia has the burden of showing that a document is a printed publication]][64]

## PERSON WITH ORDINARY SKILL IN THE ART[65]

Several times in my instructions, I will refer to a person of ordinary skill in the field of the invention.  It is up to you to decide the level of ordinary skill in the field of the invention.

---

[61] SPC contends that this additional wording is unnecessary and confusing to the jury.

[62] Adapted from Final Jury Instructions at 18-19, Dkt. No. 284, *Optis Wireless Tech., LLC v. Huawei Techs. Co.*, No. 2:17-cv-123-JRG-RSP (E.D. Tex. Aug. 25, 2018); AIPLA's *Model Patent Jury Instructions* (2019) at § 6.5 (Printed Publication).

[63] Nokia: SPC has not challenged these documents to not be printed publications, and thus this instruction is unnecessary.

[64] SPC contends this section is unnecessary as whether an asserted reference qualifies a printed publication is not in dispute.

[65] *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017), ECF No. 166.

In deciding what the level of ordinary skill is, you should consider all of the evidence introduced at trial including:

1. the levels of education and experience of the inventors and other persons working in the field;

2. the types of problems encountered in the field;

3. prior art solutions to those problems;

4. rapidity with which innovations are made; and

5. the sophistication of the technology.

A person of ordinary skill in the art is a hypothetical person who is presumed to be aware of all of the relevant prior art at the time of the claimed invention.

## OBVIOUSNESS

Nokia contends in this case that the asserted claims are invalid as obvious.  Even though an [claimed] invention may not have been identically disclosed or identically described in a single prior art reference, [[in order to be patentable, the claimed inventions also must not have been obvious]] [[the invention may have been obvious]] to a person of ordinary skill in the field of technology to which the claimed invention pertains at the effective filing date of the claimed invention.  Nokia may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art in the field of network communications at the time the invention was made.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on the building blocks of prior art.  Now, in determining whether the patent is invalid because of obviousness, you must consider the scope and content of the prior art as a whole, the differences between the prior art and the claimed invention and the level of ordinary skill in the art.  In determining the level of

ordinary skill in the art, you should consider the person of ordinary skill as one who is presumed to be aware of all pertinent prior art.

In considering whether a claimed invention is obvious, you should consider whether, as of the effective filing date of the asserted patent, there was a reason that would have prompted a person of ordinary skill in the field to combine the known elements in a way that the claimed invention does, taking into account facts such as:

1. whether the claimed invention was merely the predictable result of using prior art elements according to their known function;

2. whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3. whether the prior art teaches or suggests the desirability of combining elements in the claimed invention, such as where there is a motivation to combine;

4. whether the prior art teaches away from combining elements in the claimed invention;

5. whether it would have been obvious to try the combinations of elements in the claimed invention, such as where there is a design need or market pressure to solve a problem and there are a finite number of identified predictable solutions; and

6. whether the change resulted more from design incentives or other market forces.[66]

To find that it rendered the invention obvious, you must find that a person of ordinary skill in the art would have had a reasonable expectation of success in combining the teachings of the prior art to result in the claimed invention.

In determining whether the claimed invention was obvious, do not use hindsight. Consider only what was known as of the priority date of the invention. In other words, you should not

---

[66] *Netlist v. Samsung*, 2:21-CV-463-JRG, final jury instructions.

consider what a person of ordinary skill in the art would know now or what has been learned from the teachings of the asserted patents.[67]

In making these assessments, you must also take into account any objective evidence, sometimes called secondary considerations, that may have existed at the time of the invention and afterwards that shed light on whether or not the claimed invention is obvious, such as:

1. whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

2. whether the invention satisfied a long-felt need;

3. whether others had tried and failed to make the claimed invention;

4. whether the invention achieved unexpected results:

5. whether others in the field praised the invention;

6. whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention; and

7. whether others sought or obtained rights to the patent from the patent holder.

For commercial success to be evidence non-obviousness, there must be a nexus between the patented features of the invention and the commercial success of the device.  While these objective indicia must be taken into account, you must consider all of the evidence related to obviousness before you reach a decision.

## DAMAGES[68]

---

[67] *Netlist v. Samsung*, 2:21-CV-463-JRG, final jury instructions.

[68] *United Services Automobile Association v. Wells Fargo Bank, N.A.,* No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).

If you find that Nokia infringed any valid claim of the asserted patents, you must then consider what amount of damages to award to Smart Path for that infringement.  Now, I will instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case on any issue.

The damages that you award in this case, if you find infringement must be adequate to compensate Smart Path for any infringement.  [[However, you must not award Smart Path more damages than are adequate to compensate for the infringement.]][69] You should also not include any additional amount for the purposes of punishing Nokia or for setting an example.  Smart Path in this case has the burden to establish the amount of its damages by a preponderance of the evidence.

[[The patent laws specifically provide that damages for infringement may not be less than a reasonable royalty.]] Plaintiff Smart Path must prove the amount of its damages with reasonable certainty but need not prove the amount of damages with mathematical precision.  [[The determination of a damages award is not an exact science, and the amount need not be proven with unerring precision.]] You may approximate, if necessary, the amount to which the patent owner is entitled. Damages, however, may not be determined by a mere speculation or a guess. It may be proper to award damages in an amount if the evidence shows the extent of the damages as a matter of just and reasonable inference.[70]  Smart Path seeks damages in the form of a reasonably royalty.

---

[69] Trial Transcript, at 1321:2-3, *Netlist v. Samsung*, No. 2:21-cv-000463-JRG, Dkt. 496 (E.D. Tex. Apr. 28, 2023).

[70] *Optis Wireless Tech., LLC, et al., v. Huawei Techs. Co. Ltd.*, et al., No. 2:17-cv-123-JRG-RSP, Dkt. 310 (E.D. Tex. Aug. 24, 2018).

A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time immediately prior to when the infringement first began.

Reasonable royalty awards can take the form of a lump sum payment. A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all sales of the licensed product.

Now, in considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the Asserted Claims were valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. In the context of the hypothetical negotiation, it is not necessarily the case that each valid and infringed patent in the hypothetical negotiation contributes equally to the amount that Nokia would pay for that license, or that each patent covered by other licenses that were presented contributes equally to the amount that was paid for those licenses.

The law requires that any damages awarded to the Plaintiff corresponds to the value of the alleged inventions within the accused products, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or either parties' size or market position. This is particularly true where the Accused Product has multiple features and multiple components not covered by the patent or where the Accused Product works in conjunction with other non-patented items. Therefore, the amount you find as damages must be based on the value attributable to the patented technology.

In determining a reasonable royalty, you should consider all facts known and available to the parties at the time the infringement began.  You may also consider:

- The royalties received by the patentee for the licensing of the patent(s) in suit, proving or tending to prove an established royalty;

- The rates paid by the licensee for the use of other patents comparable to the patent in suit;

- The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

- The duration of the patent and the term of the license;

- The established profitability of the product made under the patent; its commercial success; and its current popularity;

- The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

- The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

- The opinion testimony of qualified experts;

- The amount that a licensor (such as the patent owner) and a licensee (such as Nokia) would have agreed upon at the time the infringement began if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would

have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

Now, no one of these factors is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may have heard these factors referred to during the trial as the *Georgia-Pacific* factors during testimony.

You may also consider any other factors which in your minds would have increased or decreased the royalty the infringer would have been willing to pay and that the patent owner would have been willing to accept, with both acting as normally prudent business people.

[[When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the Asserted Patents or for rights to similar technologies]][71]. Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.  If a license agreement is not sufficiently comparable, you may not rely on it in determining damages. Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope.  If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.[72]

---

[71] Final Jury Instructions at 26, Dkt. No. 284, *Optis Wireless Tech., LLC v. Huawei Techs. Co.*, No. 2:17-cv-123-JRG-RSP (E.D. Tex. Aug. 25, 2018).

[72] *Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301 (Fed. Cir. 2009); *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360 (Fed. Cir. 2017).

Now, for purposes of determining a reasonable royalty, you may consider whether at the time of the hypothetical negotiation Nokia had acceptable, non-infringing alternatives to taking a license [[from Smart Path that were available and whether that would have affected the reasonable royalty the parties would have agreed upon. A non-infringing alternative is a way of providing the same or comparable functionality or achieving the same or comparable result that does not require using the asserted claims.[73] You may compare the patented invention to non-infringing alternatives to determine the value of the patented invention, including the utility and advantages of the patent over the old modes or functionality, if any, that had been used to achieve similar results.]][74] [[and, if not, what the next-best alternative was.[75]  To be an acceptable, non-infringing alternative, a product must have the advantages of the patented invention that were important to people who purchased an alleged infringer's product. Even where an alternative would not have been acceptable to Nokia, comparing the patented solution to the next-best available alternative can indicate the market value of the patent owner's exclusive right.]]

[[A reasonable royalty is the minimum amount of compensation, but not the only form of compensation. You are permitted to consider all the benefits conferred to Nokia through its infringement of the asserted patents, including evidence of cost savings that Nokia achieved through the use of the asserted patents as well as evidence of additional profits and other benefits. A reasonable royalty can exceed the profits expected by the patentee.[76]]]

---

[73] Trial Transcript at 41:3-8, *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, No. 13-cv-00213-JRG (E.D. Tex. Feb. 13, 2015), Dkt. 300.

[74] [74] Trial Transcript at 41:3-8, *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, No. 13-cv-00213-JRG (E.D. Tex. Feb. 13, 2015), Dkt. 300.

[75] *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999) ("[O]nly by comparing the patented invention to its ***next-best available alternative***(s) … can the court discern the market value of the patent owner's exclusive right, and therefore his expected profit or reward.").

[76] *State Industries, Inc. v. Mor-Flo Industries, Inc.*, 883 F.2d 1573, 1580, 12 U.S.P.Q.2d 1026

## DATE OF COMMENCEMENT OF PATENT DAMAGES

[[[In determining the amount of damages, you must determine when the damages began. The parties do not agree on that date, and it is up to you to determine what that date is. If you find that the previous owners of the Asserted Patents sold a patented article that includes the claimed invention in the United States, you must determine whether that produced was "marked" with the patent number. "Marking" is placing either the word "patent" or the abbreviation "pat." with patent's number on substantially all of the products that include the patented invention. Under such circumstances, Smart Path has the burden of establishing that the previous patent owners substantially complied with the marking requirement. This means Smart Path must show that substantially all of the products made, offered for sale, or sold that practice the Asserted Patents were marked.

If you find the previous patent owners did not mark that article with the patent number, you must determine the date that Nokia received actual notice of the Asserted Patents and the specific product alleged to infringe. Actual notice means that the patent holder or its agent communicated to the alleged infringer a specific charge of infringement of the Asserted Patents by a specific accused product or device or group of products. The filing of the complaint in this case qualified as actual notice, so the damages period begins no later than the date the complaint was filed, August 3, 2022.

Smart Path has the burden of establishing that it is more probable than not that Nokia received notice of infringement on a date earlier than the filing of the complaint. If you find that

---

(Fed. Cir. 1989) ("The determination of a reasonable royalty … is based not on the infringer's profit margin, but on what a willing licensor and licensee would bargain for a hypothetical negotiations on the date infringement started. There is no rule that a royalty be no higher than the infringer's net profit margin.").

the previous patent owners sold a patented article that includes the claimed invention in the United States and that those products were improperly marked, but that the previous patent owners gave Nokia sufficient notice of its patents by directly notifying Nokia with a specific claim that their products infringed the Asserted Patents, then the damages period begins on February 27, 2017.

If you find that the previous patent owners did not sell a patented article that includes the claimed invention in the United States or that those products were properly marked, damages for any infringement begin six years before the lawsuit was brought against Nokia. That date is August 3, 2016.]][77] [78][79]

[[If a plaintiff or a prior owner of the asserted patents made, sold, or offered for sale within the United States, or imported into the United States, products that use or practice the asserted patents, then damages for any infringement of the asserted patents cannot begin until the date that the plaintiff either (1) gave actual notice to Defendant of its claim for patent infringement; or (2) gave constructive notice by marking the products plaintiff has sold that practice the asserted patents.[80] Defendant bears the initial burden to articulate products made, sold, offered for sale, or

---

[77]   Adapted from *Alacritech, Inc. v. Dell, Inc.* (2:16-cv-00695-RWS-RSP) Proposed Jury Instructions and 2024 AIPLA Model Patent Jury Instructions

[78] Nokia contends that Smart Path's proposed instruction fails to acknowledge the Court's ruling that Nokia met its burden of production in articulating products that practice the Asserted Patents. Dkt. 200.  Nokia also contends that Smart Path's proposed instruction fails to address that Smart Path now bears the burden to establish that the products do not practice the Asserted Patents.

[79] Smart Path disagrees that Nokia has met its burden in establishing the sale of an allegedly patent practicing article from the current or former patent owner on a per patent basis as each patent has different issue dates spanning multiple years of time.

[80] 35 U.S.C. § 287(a); *see also Team Worldwide Corp. v. Acad., Ltd.*, No. 2:19-cv-00092-JRG-RSP, 2021 U.S. Dist. LEXIS 88505, at *5 (E.D. Tex. May 10, 2021) ("The R&R precludes all pre-suit damages prior to the date of actual notice, as is consistent with Federal Circuit precedent.").

imported by a Plaintiff or a prior owner of the asserted patents the asserted patents that Defendant believes practice the asserted patents.[81]

In this case, the Court has already determined that Nokia has met this initial burden.[82] Specifically, the Court has determined that Nokia has met this initial burden by identifying two of Orckit-Corrigent's product families: the CM-4000 and the CM-100.  The CM-4000 family comprises the CM-4140, CM-4206, CM-4314, and CM-401x.  The CM-100 family comprises the CM-106 and CM-110.

Since Nokia has met this initial burden, the Plaintiff Smart Path must prove that either: (1) the CM-4000 family and/or the CM-100 family do not in fact practice the asserted patents; (2) the CM-4000 family and/or the CM-100 family were not made, sold, or offered for sale by Orckit-Corrigent within the United States, or imported into the United States, after the asserted patents issued and prior to the filing of this lawsuit on August 3, 2022; or (3) Smart Path notified Nokia of its alleged infringement of the asserted patents either through complying with the marking requirements or providing actual notice.[83]

---

[81] *See Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017) ("We hold an alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287.  To be clear, this is a low bar.  The alleged infringer need only put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent.")

[82] SPC: Telling the jury that Nokia has purportedly met its burden is prejudicial and not relevant to the jury's role as a fact finder.

[83] 2018 AIPLA Model Patent Jury Instructions 10.1.2; 35 U.S.C. § 287(a); *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.* (Arctic Cat II), 950 F.3d 860, 864 (Fed. Cir. 2020); *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.* (Arctic Cat I), 876 F.3d 1350, 1368 (Fed. Cir. 2017); *Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373–74 (Fed. Cir. 2010); *Gart v. Logitech, Inc.,* 254 F.3d 1334, 1345 (Fed. Cir. 2001); *Lans v. Digital Equip. Corp.,* 252 F.3d 1320, 1327–28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.,* 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1111 (Fed. Cir. 1996); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 184–87 (Fed. Cir. 1994); *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062, 1066 (Fed. Cir. 1987); *see also Team*

You must first consider whether Smart Path has proven either element (1) or (2). If you find Smart Path has met its burden on either or both of these elements, you may award Smart Path damages from the date you find that Nokia first infringed the asserted patents, though no earlier than August 3, 2016.[84]

If you find Smart Path has not proven either of elements (1) or (2), Smart Path must prove that it provided notice to Nokia of Nokia's alleged infringement of the asserted patents before filing this lawsuit.[85] The first way Smart Path can provide notice is through marking the products identified by Nokia.[86] In this case marking requires Smart Path to prove that licensees and prior owners of the Asserted Patents, such as, Orckit-Corrigent, made reasonable efforts to ensure that its substantially all of the CM-4000 and CM-100 products that using or practicing the asserted patents, or on the labeling of such products, the word "patent" or the abbreviation "pat" with the number of the relevant patent.[87] Smart Path must also show that, if Orckit-Corrigent began marking its products, the marking has to be substantially consistent and continuous.[88]

Whether Orckit-Corrigent made reasonable efforts to ensure Orckit-Corrigent it complied with these marking requirements is a "rule of reason" inquiry and should be viewed through the lens of encouraging patentees to give public notice that a product is patented to help avoid innocent

_Worldwide Corp. v. Acad., Ltd._, No. 2:19-cv-00092-JRG-RSP, 2021 U.S. Dist. LEXIS 88505, at *5 (E.D. Tex. May 10, 2021).

[84] 35 U.S.C. § 286.

[85] _See Arctic Cat Inc. v. Bombardier Recreational Prods., Inc._, 876 F.3d 1350, 1368 (Fed. Cir. 2017); _Arctic Cat Inc. v. Bombardier Recreational Prods. Inc._ (Arctic Cat II), 950 F.3d 860, 864 (Fed. Cir. 2020); 2018 AIPLA Model Patent Jury Instructions 10.1.2.

[86] 35 U.S.C. § 287(a); 2018 AIPLA Model Patent Jury Instructions 10.1.2.

[87] 2018 AIPLA Model Patent Jury Instructions 10.1.2; _Devices for Med., Inc. v. Boehl,_ 822 F.2d 1062, 1066 (Fed. Cir. 1987)

[88] _American Medical Sys. v. Medical Eng'g Corp._, 6 F.3d 1523, 1537 (Fed. Cir. 1993).

infringement.[89] If Orckit Corrigent did not at least make reasonable efforts to ensure that Orckit-Corrigent marked substantially all CM-4000 and CM-100 products using or practicing the asserted patents, then Smart Path did not provide notice to Nokia through marking.[90] If you find Smart Path provided notice to Nokia through marking, you may award Smart Path damages from the date you find that Nokia first infringed the asserted patents, though no earlier than August 3, 2016.

If you find that Smart Path did not provide notice to Nokia through marking, the damages period cannot begin until you find Smart Path provided actual notice to Nokia of Nokia's alleged infringement of the asserted patents.[91] Actual notice requires Smart Path to notify Nokia with a specific claim that the accused technology allegedly infringed the asserted patents.[92] Notice to Nokia of the existence of the asserted patents or Smart Path's ownership of the patents does not provide actual notice of Nokia's alleged infringement of those patents.[93] Nor can Nokia be found to have notice of its alleged infringement through its actions, alone.[94] Rather, you must find that

---

[89] *Maxwell v. J. Baker, Inc*., 86 F.3d 1098, 1111 (Fed. Cir. 1996); *see Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp*., 616 F.3d 1357, 1374 (Fed. Cir. 2010).

[90] *Maxwell v. J. Baker, Inc*., 86 F.3d 1098, 1111 (Fed. Cir. 1996); *see Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp*., 616 F.3d 1357, 1374 (Fed. Cir. 2010).

[91] *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 950 F.3d 860, 864 (Fed. Cir. 2020); *see also Gart v. Logitech, Inc.*, 254 F.3d 1334, 1346 (Fed. Cir. 2001); *Lans v. Digital Equip. Corp.,* 252 F.3d 1320, 1327–28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.,* 246 F.3d 1336, 1353 (Fed. Cir. 2001); 2018 AIPLA Model Patent Jury Instructions 10.1.2.

[92] *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 950 F.3d 860, 864 (Fed. Cir. 2020); *see also Gart v. Logitech, Inc.*, 254 F.3d 1334, 1346 (Fed. Cir. 2001); *Lans v. Digital Equip. Corp.,* 252 F.3d 1320, 1327–28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.,* 246 F.3d 1336, 1353 (Fed. Cir. 2001); 2018 AIPLA Model Patent Jury Instructions 10.1.2.

[93] *Lans v. Digital Equip. Corp.,* 252 F.3d 1320, 1327–28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.,* 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062, 1066 (Fed. Cir. 1987); 2018 AIPLA Model Patent Jury Instructions 10.1.2

[94] *Lans v. Digital Equip. Corp.,* 252 F.3d 1320, 1327–28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.,* 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062, 1066 (Fed. Cir. 1987); 2018 AIPLA Model Patent Jury Instructions 10.1.2

Smart Path provided notice to Nokia.[95] This type of notice starts the damages period from the date Defendants received the notice.[96]

If you find that Smart Path, before filing this lawsuit, did not provide notice to Nokia of Nokia's alleged infringement either by complying with the marking requirements or providing actual notice to Nokia, then Smart Path can only recover damages for infringement of the asserted patents after it filed its Complaint on August 3, 2022.[97]]] Now, with those instructions, we're ready to hear closing arguments from the attorneys in this case.

## DELIBERATIONS

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and partially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.  You have heard all of the

---

[95] *Lans v. Digital Equip. Corp.,* 252 F.3d 1320, 1327–28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.,* 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062, 1066 (Fed. Cir. 1987); 2018 AIPLA Model Patent Jury Instructions 10.1.2

[96] *Lans v. Digital Equip. Corp.,* 252 F.3d 1320, 1327–28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.,* 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062, 1066 (Fed. Cir. 1987); 2018 AIPLA Model Patent Jury Instructions 10.1.2

[97] 2018 AIPLA Model Patent Jury Instructions 10.1.2; 35 U.S.C. § 287(a); *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.* (Arctic Cat II), 950 F.3d 860, 864 (Fed. Cir. 2020); *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.* (Arctic Cat I), 876 F.3d 1350, 1368 (Fed. Cir. 2017); *Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.,* 616 F.3d 1357, 1373–74 (Fed. Cir. 2010); *Gart v. Logitech, Inc.,* 254 F.3d 1334, 1345 (Fed. Cir. 2001); *Lans v. Digital Equip. Corp.,* 252 F.3d 1320, 1327–28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.,* 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1111 (Fed. Cir. 1996); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 184–87 (Fed. Cir. 1994); *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062, 1066 (Fed. Cir. 1987); *see also Team Worldwide Corp. v. Acad., Ltd.*, No. 2:19-cv-00092-JRG-RSP, 2021 U.S. Dist. LEXIS 88505, at *5 (E.D. Tex. May 10, 2021) ("The R&R precludes all pre-suit damages prior to the date of actual notice, as is consistent with Federal Circuit precedent.")

evidence in this case.  You have now heard the argument of counsel.  The Court has now given you the charge in this case.  In just a few moments you're going to retire to the jury room, select one of your members to act as foreperson and begin performing the function for which you have been chosen and for which you have been impaneled in accordance with the oath that you took as jurors.

You will remember at the beginning of this trial the Court admonished you not to discuss this case with each other until it was submitted to you.

It is now time for you to begin your discussions, and you certainly may express an opinion from the evidence that you have heard and use any reasonable means to persuade other members of the jury to your convictions and to your honest opinion.  You are to reach a verdict which speaks the truth and which does justice to all parties without favor, bias or prejudice in any particular, either for or against any party to this lawsuit.

In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous, but do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinions of your fellow jurors or for the mere purpose of returning a verdict.

Answer the questions in the verdict form based on the facts as you find them to be, following the instructions that the Court has given you on the law. Do not decide who you think should win this case and then answer the questions accordingly.  Again, I remind you, your answers and your verdict in this case must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stages in life.

[[A patent owner is entitled to protect its patent rights under the laws of the United States. This includes bringing a suit in a United States District Court for money damages for infringement.[98]]] [99]

The law recognizes no distinction between types of parties. All corporations, all partnerships, all other organizations stand equal before the law, regardless of their size, regardless of who owns them, and they are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you'll each have a copy of these written jury instructions to take with you. If you desire, during your deliberations, to review any of the exhibits which the Court has admitted into evidence during the trial, you should advise me by written note delivered to the Court Security Officer. He will bring me your note, and then I will send you that exhibit or those exhibits.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

---

[98] *Optis Wireless Technology, LLC et al v. Huawei Technologies Co., Ltd. et al.*, 2:17-cv-00123-JRG, Final Jury Instructions (E.D. Tex. Aug. 25, 2018).

[99] Nokia contends that this instruction is unnecessary and prejudicial as it implies that Smart Path was justified in bringing its lawsuit instead of treating the parties as equals, which is stated in the following paragraph.

Any notes that you've taken over the course of the trial are aids to your memory only. If your memory should differ from your notes, then you should rely on your memory and not your notes. The notes are not evidence. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time during your deliberations, you should give a written message or a question to the Court Security Officer who will bring it to me. I'll then respond as promptly as possible, either in writing or by having you brought back into the courtroom where I can address you orally. I will always first disclose to the attorneys in the case your question and my response before I answer your question.

After you have reached your verdict and I have discharged you from your duty as jurors, you need to understand that you are not required to talk with anyone about your service in this case. By the same token, after I have discharged you from your duty as jurors, you are completely free to discuss your service as jurors in this case with anyone that you choose to. The choice is yours.

You should understand the practice in this Court is that after you are discharged, if you wish to talk about your service as jurors with any of the attorneys in the case, it's up to you to initiate a conversation with them. They are not permitted to initiate a conversation with you.

All right. I will now hand eight copies of these final jury instructions and one clean copy of the verdict form to the Court Security Officer to deliver to the jury in the jury room.

Ladies and Gentlemen of the Jury, you may now retire to the jury room to deliberate. We await your verdict.